UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMARI MAZERA,

    Plaintiff,

v.                                                       Case No. 07-12970

VARSITY FORD SERVICES, LLC,         HONORABLE AVERN COHN
et al.,

    Defendants.

_____/

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DECLARATORY RELIEF

I. Introduction

This is an employment case. Plaintiff Omari Mazera (Mazera), a naturalized American citizen and a native of Kenya, is suing his former employer, defendant Varsity Ford Services, LLC (Varsity Ford),[1] alleging he was terminated in violation of state and federal law on the basis of his race, religion, national origin, and disability.

Before the Court is Mazera's motion for a declaratory judgment to determine whether his claims against Varsity Ford are subject to arbitration. Mazera says that the arbitration provision is unenforceable for several reasons. Varsity Ford says that the arbitration provision is valid and asks that it be enforced. The Court agrees with Varsity Ford in part. Mazera's claims are subject to arbitration, however, the cost-splitting

---

[1] Mazera names the following defendants: Varsity Ford Services, LLC, Varsity Ford Management Services, LLC, Stanford Brothers, Inc., d/b/a/ Varsity Ford, Stanford Brothers, Inc., d/b/a Westgate Leasing, and Christopher Sylvio. All defendants are represented by the same counsel. For ease of reference, defendants will be collectively referred to as "Varsity Ford."

provision requiring Mazara to pay $500 is unenforceable and severed. The reasons follow.

## II. Background

Mazera began his employment with Varsity Ford in April 1999 as a new car porter. Upon his hire, Mazera received an employee handbook. It did not contain an arbitration provision, but Varsity Ford "reserve[d] full discretion to add to, modify, or delete provisions of this handbook at any time without advance notice." The forward to the handbook states:

> NOTHING CONTAINED IN THIS HANDBOOK IS INTENDED TO CREATE (NOR SHALL BE CONSTRUED AS CREATING) A CONTRACT OF EMPLOYMENT (EXPRESS OR IMPLIED) OR GUARANTEE EMPLOYMENT FOR ANY TERM OR FOR ANY SPECIFIC PROCEDURES. THERE IS NO CONTRACT OF EMPLOYMENT BETWEEN VARSITY FORD AND ANY ONE OR ALL OF ITS EMPLOYEES. EMPLOYMENT SECURITY CANNOT BE GUARANTEED FOR OR BY ANY EMPLOYEE.

In April 2004, the handbook was revised to include a Mandatory Complaint Procedure. The Mandatory Complaint Procedure outlines a four step process which an employee must follow for processing a complaint regarding their employment, including a complaint of discrimination. Steps one to three apply to internal handling of a complaint. If a complaint is not resolved at step three, step four requires a claim be submitted to arbitration.

On October 15, 2005, the handbook was again revised. The Mandatory Complaint Procedure was revised to set forth in greater detail the arbitration process, including costs, selection of an arbitrator, powers of the arbitrator, and enforcement of an arbitration award. The forward to the handbook was also revised to state:

> NOTHING CONTAINED IN THIS HANDBOOK IS INTENDED TO CREATE

> (NOR SHALL BE CONSTRUED AS CREATING) A CONTRACT OF EMPLOYMENT (EXPRESS OR IMPLIED) OR GUARANTEE EMPLOYMENT FOR ANY TERM OR FOR ANY SPECIFIC PROCEDURES. THERE IS NO CONTRACT OF EMPLOYMENT BETWEEN VARSITY FORD AND ANY ONE OR ALL OF ITS EMPLOYEES. EMPLOYMENT SECURITY CANNOT BE GUARANTEED FOR OR BY ANY EMPLOYEE. **THE ONLY EXCEPTION IS THE MANDATORY COMPLAINT PROCEDURE WHICH IS A BINDING OBLIGATION FOR BOTH EMPLOYEES AND THE DEALERSHIP**.

(Emphasis added).

On October 29, 2004, Mazera signed a document which states in relevant part:

> I acknowledge receipt of this Mandatory Complaint Procedure and understand that compliance with this Procedure is a term and condition of employment.

On August 24, 2006, Mazera was terminated from his employment.

### III. Analysis

#### A.

Both state and federal law favor arbitration. The Federal Arbitration Act ("FAA") embodies the "liberal federal policy of favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Thus, "arbitration should not be denied unless it may be said with positive assurance that the clause does not cover the dispute." Georgia Power Co. v. Cimarron Coal Corp., 526 F.2d 101 (6th Cir. 1975) (internal quotation marks and citation omitted). Because it is the arbitration agreement that creates the parties' duty to arbitrate, "a party cannot be required to submit to arbitration any dispute that the party has not agreed to so submit." Bratt Enters., Inc. v. Noble Int'l Ltd., 338 F.3d 609, 612 (6th Cir.2003) (citing Roney & Co. v. Kassab, 981 F.2d 894, 897 (6th Cir. 1992)). It is well-settled, however, that "when the language is ambiguous or unclear, any doubts concerning the scope of arbitrability should be

resolved in favor of arbitration." McGinnis v. E.F. Hutton & Co., 812 F.2d 1011, 1013 (6th Cir. 1987) (citing Moses H. Cone Mem. Hosp., 460 U.S. at 24-25).

It is also clear that federal law allows for the arbitration of employment disputes. The Sixth Circuit has held that a party may be compelled to arbitrate claims under both Title VII and the Age Discrimination in Employment Act. See Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305, 312 (6th Cir.1991). Other courts, employing the same reasoning, have held that a party may also be compelled to arbitrate claims under § 1981. See Winfrey v. Bridgestone/Firestone, Inc., No. 99-1405, 1999 WL 1295310, at *2 (8th Cir. Dec.23, 1999) ("We also reject Winfrey's argument that his Title VII and § 1981 claims cannot be subjected to the Plan's mandatory arbitration provisions."); Williams v. Katten, Muchin & Zavis, 837 F.Supp. 1430, 1436-37 (N.D.Ill.1993) (stating that "Plaintiff has failed to meet her burden of providing that in enacting the civil rights statutes she invokes here, Congress intended to preclude arbitration as a means of addressing claims thereunder").

Similarly, the Michigan Court of Appeals has held that an agreement to arbitrate statutory employment discrimination claims, such as those arising under the Elliott-Larsen Act, is valid so long as it does not waive the substantive rights and remedies of the statute and the arbitration procedures are fair. See Rembert v. Ryan's Family Steak Houses, Inc., 235 Mich. App. 118, 156(1999).

B.

Mazera argues that the arbitration provision contained in the Mandatory Complaint Procedure is unenforceable for several reasons. Each is addressed in turn.

First, he says he did not agree to be bound by it because he did not sign the

4

agreement; thus, no contract was formed. This argument lacks merit. As noted above, Mazera signed an acknowledgment of receipt of the Mandatory Complaint Procedure which includes the arbitration provision and specifically agreed to be bound by its provisions. Moreover, Mazera's reliance on <u>Stewart v. Fairlane Community Mental Health Center</u>, 225 Mich. App. 410 (1997) is misplaced. In <u>Stewart</u>, the Michigan Court of Appeals held that an arbitration provision contained in an amended employee handbook was not enforceable. Although the employee signed an acknowledgment, the acknowledgment did not mention the arbitration policy or indicate whether the employee agreed to the new provision. It also contained language indicating that the employee handbook was not a contract. The court of appeals also found that there was not indication that the employer agreed to be bound by the arbitration provision.

Here, unlike <u>Stewart</u>, the acknowledgment form Mazera signed clearly states that he is aware of the Mandatory Complaint Procedure and agrees to be bound by it. The revised forward to the employee handbook also makes clear that the Mandatary Complaint Procedure is a contractual obligation of both the employee and Varsity Ford. Under these circumstances, the arbitration provision is enforceable.

Second, Mazera argues that because the arbitration provision was not contained in the initial handbook he received upon his hire, it is not a condition of his employment. This argument fails because Varsity Ford reserved the right to amend the handbook and Mazera signed an acknowledgment regarding the Mandatory Complaint Procedure.

Third, Mazera says that employment discrimination claims may not be the subject of arbitration. This argument fails in light of the precedent cited above which specifically allows for the arbitration of employment discrimination claims under state

and federal law. None of the statutes Mazera has asserted prohibit arbitration.[2]

Fourth, Mazera argues that the arbitration provision is not enforceable due to its cost-splitting requirements. Under the Mandatory Complaint Procedure, if a complaint goes to arbitration, the following cost provisions apply:

> You [employee] must deposit with the General Manager $500 or five (5) days pay, whichever is less. If you request a waiver of the deposit fee, you must state the reasons for your request and submit the request to the General Manager. . . . The deposit fee shall be refunded to you if you prevail in full before the Arbitrator.
> . . .
> The Arbitrator's fee and expenses shall be borne fully by the [employer] if the award is fully in your favor with the deposit for arbitration to be refunded to you. The Arbitrator's fees and expenses shall be shared equally by both parties if all or part of the Arbitration decision is in favor of [the employer], but your costs for the arbitration fee shall not exceed $500, or five days pay, whichever is less, with the remainder of the expenses to be paid by the [employer].

In Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 90 (2000), the Supreme Court recognized that an agreement that did not make specific provisions for the costs of arbitration could be deemed unenforceable if those costs compel a party to forego enforcement of her rights. The Court left open, however, how detailed such a showing must be.

---

[2]Furthermore, Mazera's reliance on cases holding arbitration provisions unenforceable which are contained in collective bargaining agreements (CBA), including the undersigned's decision in Jackson v. Quanex Corp., 889 F.Supp. 1007 (E.D. Mich. 1995), such reliance is misplaced. In Jackson, the Court considered whether an arbitration clause found in a CBA required arbitration of an employment discrimination claim under the FAA. Here, the fact that no CBA is involved is significant because the Sixth Circuit has explicitly stated that "collective bargaining agreements are 'contracts of employment' and therefore outside the scope of the FAA," Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305, 311 (6th Cir. 1991) (citing Bacashihua v. USPS, 859 F.2d 402, 404-06 (6th Cir. 1988) (finding collective bargaining agreements are "contracts of employment" within the meaning of § 1 of the FAA and thus excluded from the coverage of the Act)). Thus, Jackson, and similar cases, are inapposite.

In Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 669-70 (6th Cir.2003) (en banc ),[3] the Sixth Circuit discussed at length the application of Green Tree to a case involving cost-splitting clauses contained in the arbitration provisions of two employment agreements which required arbitration of federal claims. The Sixth Circuit in Morrison held:

> [P]otential litigants must be given an opportunity, prior to arbitration on the merits, to demonstrate that the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum. Our approach differs from the case-by-case approach advocated in Bradford by looking to the possible "chilling effect" of the cost-splitting provision on similarly situated potential litigants, as opposed to its effect merely on the actual plaintiff in any given case.

Id. at 663. As a result, the court in Morrison instructed that, "if the reviewing court finds that the cost-splitting provision would deter a substantial number of similarly situated potential litigants, it should refuse to enforce the cost-splitting provision in order to serve the underlying functions of the federal statute." Id.

Here, the Court is satisfied that requiring Mazera to pay $500 towards the cost of arbitration is prohibitively expensive under the standards set forth in Green Tree and Morrison. While Mazera is incorrect in arguing that he is exposed to "tens of thousands of dollars of arbitrator fees and possibly other costs" because a plain reading of the relevant text shows that at most Mazera must pay $500, and that is only if he is not fully

---

[3]The discussion relating to cost-splitting and Morrison applies only to Mazera's federal claims. See Stutler v. T.K. Constructors Inc., 448 F.3d 343, 346 (6th Cir. 2006). As to Mazera's state law claims, the Court must determine whether the cost-splitting provision survives traditional state-law contract defenses. See id. at 347 (noting that as to state law claims and arbitration "generally applicable state-law contract defenses[,] like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." (Moore, J., concurring) (quoting Cooper v. MRM Investment Co., 367 F.3d 493, 498 (6th Cir. 2004)).

7

successful in arbitration.  However, requiring Mazera, who likely earned at best slightly more than a minimum wage, to pay $500 in order to present a grievance to an arbitrator is unreasonable.  Under the Mandatory Complaint Procedure, a potential litigant, such as Mazera, who believes they were treated unfairly and in violation of the law, and may be unemployed, will have to arrange to pay $500 in order to pursue their claim.  While Varsity Ford is correct that an employee may be able to waive the $500, the fact that Varsity Ford has the sole authority to determine whether the $500 will be waived raises a question as to the genuineness of the waiver provision.  Faced with this choice of having to pay $500 at the outset-which really boils down to risking one's scarce resources in the hopes of an uncertain benefit-the Court finds that a substantial number of similarly situated persons would be deterred from seeking to vindicate their federal statutory rights under these circumstances.

As to whether the provision is unenforceable as applied to Mazera's state law claims, the issue is one of traditional contract defenses, which in this case is unconscionability.  See n.3 , supra.  Michigan law provides a two-pronged test governing the determination whether a contract qualifies as unconscionable:  "(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?; (2) Is the challenged term substantively reasonable?"  Hubscher & Son, Inc v. Storey, 228 Mich. App 478, 481; 578 NW2d 701 (1998) (internal quotation omitted).  "Reasonableness is the primary consideration."  Id.  As one court has explained:

> In order for a contract or contract provision to be considered
> unconscionable, both procedural and substantive unconscionability must
> be present.  Procedural unconscionability exists where the weaker party

> had no realistic alternative to acceptance of the term. If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural unconscionability. Substantive unconscionability exists where the challenged term is not substantively reasonable. However, a contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other. Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience.

Clark v. DaimlerChrysler Corp., 268 Mich. App 138, 143-44 (2005) (citations omitted).

Here, the cost-splitting provision is procedurally unreasonable because there was unilateral acceptance. Mazera was forced to accept it in order to continue employment. The cost-splitting provision is substantively unreasonable for the same reasons explained above - that is, it would deter Mazera and other similarly situated potential litigants from pursuing their claims.

Having determined that the $500 provision is unenforceable, the question is whether is can be severed from the Mandatory Complaint Procedure. Supreme Court precedent dictates that we resolve any doubts as to arbitrability "in favor of arbitration." Moses H. Cone Memorial Hosp., 460 U.S. at 24-25. Similarly, the Sixth Circuit has held recently that, when the arbitration agreement at issue includes a severability provision, courts should not lightly conclude that a particular provision of an arbitration agreement taints the entire agreement. See Great Earth Cos. v. Simons, 288 F.3d 878, 890-91 (6th Cir.2002) (holding that when agreement includes severability provision, intent of the parties and policy in favor of arbitration dictate that rest of agreement should be held enforceable). Michigan law is in accord. See Professional Rehabilitation Assoc. v. State Farm Mut. Automobile Ins. Co., 228 Mich. App 167, 174 (1998) (noting that even if a portion of a contract is invalid, the defect does not void the valid provisions if they are

severable, noting that "[t]he primary consideration in determining whether a contractual provision is severable is the intent of the parties.")

Here, the Mandatory Complaint Procedure contains some language regarding severability, stating that "Should any portion of this Policy be ruled invalid it will not affect the remainder of the provisions of this Policy." Mandatory Complaint Procedure at Section I., page 6. Based on this language evidencing intent and in light of the policy in favor of arbitration, the Court is satisfied that the $500 requirement can be severed from the rest of the Mandatory Complaint Procedure.

Finally, Mazera argues that the arbitration provision violates public policy. This argument fails in light of the precedent cited above which holds that public policy, both under state and federal law, favors the use of arbitration to resolve disputes.

Overall, the Court is satisfied that the arbitration process provided for within the Mandatory Complaint Procedure is enforceable under state and federal law with the exception of requiring Mazera to pay $500. Varsity Ford reserved the right to amend the employment handbook. It amended the employee handbook during the course of Mazera's employment to add a Mandatory Complaint Procedure which includes arbitration. Mazera signed an acknowledgment of receipt of the Mandatory Complaint Procedure. The forward to the revised employee handbook specifically referenced the Mandatory Complaint Procedure as being a binding obligation for both employees and Varsity Ford. In addition, the arbitration process, including selection of an arbitrator, the rules under which the arbitrator act, the arbitrator's authority to provide an employee with all rights and remedies available under state and federal law, and the ability to enforce the arbitration award in state court, is fair and reasonable.

The $500 requirement, however, for an employee bringing a claim in arbitration will deter a substantial number of potential employees from proceeding to arbitration and is not enforceable.

SO ORDERED.

                                                   s/Avern Cohn
                                                   AVERN COHN
                                                   UNITED STATES DISTRICT JUDGE

Dated: February 1, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 1, 2008, by electronic and/or ordinary mail.

                                                 s/Julie Owens
                                                 Case Manager, (313) 234-5160